**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| KAITLIN A. TUMINELLA, individually and on behalf of all similarly situated persons,<br><br>Plaintiff<br><br>vs.<br><br>STERLING HEALTHCARE MANAGEMENT, LLC and ASBURY TOWERS RETIREMENT COMMUNITY INC.,<br><br>Defendants | **CLASS ACTION COMPLAINT**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 USC § 216(b)**<br><br>CASE NO. 2:26-cv-424 |

***CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF***

Comes now Plaintiff Kaitlin A. Tuminella ("Tuminella"), individually and on behalf of all other similarly situated persons, by her counsel, and for her Complaint against Defendants Sterling Healthcare Management, LLC ("Sterling") and Asbury Towers Retirement Community Inc. ("Asbury Towers") (hereinafter collectively "Defendants"), alleges and says:

## *I. STATEMENT OF CASE*

This case challenges policies and practices of Defendants that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* and the Indiana Wage Payment Statute ("IWPS"), I.C. 22-2-5. Tuminella brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Tuminella brings this

case individually and on behalf of other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins"). Tuminella also brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the IWPS on behalf of other employees employed by Defendant in the State of Indiana. Tuminella brings this action for herself and all current and/or former employees of Defendants who worked as hourly paid employees at one or more of Defendants' Indiana-based health care facilities.

Tuminella's FLSA collective action claims and IWPS class action claims focus on a series of Defendants' wage violations, which include:

1. Time Clock Rounding and Thirty Minute Auto Deducted Meal Breaks. Defendants failure to pay wages and overtime compensation in full and on time based upon Defendants' unlawful and non-neutral Kronos time clock punch rounding schemes, including the rounding of Kronos time clock punches in at the beginning of a shift, out at the end of a work shift, and the application of an automatically deducted meal break period of a certain duration (generally, 30 minutes), especially when meal break durations (time out and time back in) were not recorded. Defendants had a written rule telling employees to clock out and then back in if they took a 30 minute meal break, but Defendants routinely took automatically deducted time from Plaintiffs' time recorded on the Kronos time clock when employees did not record on the time clock any meal break taken. This 30 minute auto deduction was taken by Defendants whether or not an employee took a meal break at all, whether or not an employee entered data to advise the Defendants that the employee's meal break was missed or interrupted,

and regardless of the duration of the meal break (e.g., less than 30 minutes in length).

2. Training Hours Not Included as Overtime Hours.

Tuminella and her fellow non-exempt, hourly paid coworkers were not properly paid overtime for many hours each worked in excess of forty (40) each week, particularly hours worked in "training" that were paid at a straight time rate rather than paid at an overtime compensation rate. Defendants would not include "training" hours with all other hours worked and would not pay overtime compensation rates for "training" hours, even though employees' regular shift hours plus training hours routinely added to more than 40 total hours worked in a seven day work week.

3. Regular Rate Violations.

Particularly in weeks where Defendants paid no overtime compensation at all because some of the hours worked were designated "training" hours, Defendants failed to properly pay overtime compensation at its full rate because Defendants failed and refused to include shift premiums, weekend differential pay, "retro" pay and bonuses in its employees' regular rates of pay.

## *II. FACTUAL ALLEGATIONS*

1. Tuminella is a resident of the State of Indiana, and is domiciled in Greencastle, Putnam County, Indiana.

2. Defendant Sterling Healthcare Management, LLC describes itself to Tuminella and her fellow coworkers in the Sterling Healthcare Management LLC employee handbook as follows:

> "Welcome to Team Sterling!
>
> Congratulations on becoming a member of Team Sterling! You have joined an organization that has established an outstanding reputation for *QUALITY CARE* and *DEDICATION TO OUR RESIDENTS.* Everyone in the organization deserves credit for this commitment to excellence. We hope you will find satisfaction and take pride in your work here. AS a member of our team, we expect you to contribute your talents and energies to further improve the environment and quality of the company and the lives of the residents we serve.
>
> This employee handbook has been prepared to provide information answering most of the questions you may have concerning your Facility, its benefit programs, as well as company policies and procedures."

Sterling Healthcare Management LLC describes itself to Tuminella and all coworkers as the "employer." Its most recent version of the handbook was dated January 1, 2025 and was directed to and applied to all Sterling Healthcare Management LLC employees working, at the least, at Asbury Towers, Briarcliff Health & Rehabilitation, Milton Home, Morning View Assisted Living and South Shore Health & Rehabilitation. All policies were the policies for "Sterling Healthcare Management LLC" employees, not simply employees of a single facility. This included the Sterling Healthcare Management LLC policies governing "Employment Policies," "Workplace/Operations Policies," "Work Hours/Pay/Attendance" and "Benefits and Leaves of Absence."

3. Tuminella has been employed by Defendants as a Registered Nurse working at its Asbury Towers location from late November 2025 to the present. She put in notice of her voluntary resignation several months ago and her last scheduled day of work is Monday June 15, 2026. Tuminella has been a non-exempt, hourly paid employee. She has been paid some of her earned overtime compensation at an overtime rate, but she has not been paid full overtime compensation or paid overtime at her full regular rate of pay. Most recently, Tuminella's straight time hourly rate of pay was $40.00 per hour.

4. Specifically, Defendant Sterling Healthcare Management LLC is Tuminella and her similarly situated coworkers' employer under the FLSA. It is jointly and severally liable to Tuminella with Defendant Asbury Towers Retirement Community Inc. Defendant Sterling Healthcare Management LLC creates all pay roll, time clock and overtime pay policies and practices at issue in this litigation. Defendants' pay roll functions are applied at the headquarters of Defendant Sterling Healthcare Management LLC in Skokie, Illinois. Defendant Sterling Healthcare Management LLC issues its policies in its employee handbook and enforces its own policies. The decisions at issue in this litigation, including the decisions to round time clock punches, not pay training time at an overtime compensation rate, the regular rate violations and the automatically deducted meal break violations are all company-wide decisions made by Defendant Sterling Healthcare Management LLC.

5. Tuminella can provide more detailed descriptions of several of the overtime violations Defendants have committed against her.

6. Regarding all training time (which Defendants sometimes call dementia training or "Relias" training), Defendants instructed Tuminella and all similarly situated coworkers to keep track of all training hours separately on a piece of paper. Tuminella was not allowed to record her training work hours on Defendants' electronic time clock. Defendants would pay for training hours at Tuminella's base rate of pay, but would not include the hours worked in the overtime calculation and would not pay the training hours at an overtime rate of compensation.

7. To provide a specific example of Defendant's FLSA overtime violations related to training time, Tuminella kept her own notes of the time she worked in the one week pay period from April 26, 2026 to May 2, 2026. Tuminella worked as follows:

April 26, 2026 5:59 a.m. (in) to 6:21 p.m. (out) 12:22 (time on clock)

April 27, 2026 7 hours and 15 minutes Relias training 7:15 (time on clock)

April 29, 2026 6:01 a.m. (in) to 6:20 p.m. (out) 12:19 (time on clock)

April 30, 2026 6:01 a.m. (in) to 6:17 p.m. (out) 12:16 (time on clock)

Tuminella reported working at least 44 hours and 12 minutes in this week. Defendants paid no overtime whatsoever to Tuminella, even though she worked at least 4.2 overtime hours. Instead, Defendants paid Tuminella for only 35.0 or 36.0 hours at $40.00 per hour straight time for the week in the "hourly" category, and paid Tuminella for 7.25 hours at $40.00 per hour straight time in the "training" category. No overtime compensation was paid at the one and one-half time Tuminella's regular rate. Indeed, even if Defendants subtracted three 30 minute auto deducted meal breaks from Tuminella's shifts in the week from April 26, 2026 to May 2, 2026, Tuminella was still owed overtime for 2 hours and 42 minutes (2.7 hours) at an overtime rate that would be more than $60.00 per overtime hours ($40/hour base rate, plus shift differential pay to create regular rate multiplied by 1.5). Tuminella lost more than $54.00 in overtime compensation in this one week and, with FLSA presumptive liquidated damages, Tuminella is owed more than $108.00 in FLSA damages for this single week.

8. Defendants intentionally commit FLSA overtime violations by failing to include employee training hours as hours worked when calculating overtime compensation.

9. Using that same one week pay period from April 26, 2026 to May 2, 2026, Defendants further committed FLSA overtime violations by failing to include certain earned premium pay in Tuminella's overtime rate based upon Tuminella's regular rate of pay. Indeed, Defendants paid no overtime whatsoever to Tuminella for the pay period, including this one week. Tuminella did, however, work overtime hours and she was paid the following types of premium pay - "Shift 2 ($21.50)," "Shift 3 ($15.50" and "Wknd Diff (35.25)." All of this shift

differential pay should have been included with Tuminella's $40.00 per hour base rate of pay to increase Tuminella's regular rate and increase Tuminella's overtime rate of pay for the week to a figure greater than $60.00 per overtime hour.

10. At all times relevant to this action, all of the Tuminella and her similarly situated coworkers' compensable work time was recorded on Defendants' electronic time clocks. While all recorded, compensable work hours were recorded on Defendants' time clock, Defendants rounded those time punches and did not pay wages for all compensable and recorded work time.

11. Tuminella and her similarly situated coworkers are and were common victims of Defendants' compensation scheme whereby it illegally and impermissibly rounded time clock punches and log in entries in its favor and in a manner that failed to pay Tuminella and all similarly situated coworkers for significant compensable work hours.

12. Defendants have created a compensation scheme through a series of computer software commands (time punch rounding commands) programmed into Defendant's time clock software and payroll software, coupled with multiple company disciplinary rules regarding time clock usage and tardiness that ensure that Defendants will always benefit from their time punch rounding scheme and guarantee that Defendants will take an impermissible and unfair financial advantage over its employees by rounding in a non-neutral fashion that results in enormous sums of unpaid hourly wages and overtime compensation owed to Defendants' hourly paid employees on a cumulative basis.

13. At all times relevant, for Tuminella and all of Defendants' hourly-paid employees, Defendants used and uses an electronic time keeping system. Employees clock in using the electronic time clock or logging in to a program on a computer. Using this time clock

or log in function, for each shift, the employee would record his/her actual time he/she began work for each shift and record the actual time the employee ended his/her work shift. If Defendants paid non-exempt, hourly-paid employees wages and overtime based upon its machine(s)' actual time punches and log in entries, Defendants would likely have paid wages in compliance with the FLSA and the IWPS.

14. Defendants do not pay employees' hourly-paid wages based upon actual employee time worked and based upon Defendants' own time punch/log in records.

15. Importantly, Defendants do not record non-exempt, hourly-paid employees' work time in any other way. The only time records Defendants have to base its payment of wages on are the time records generated by its electronic time clocks and programs.

16. Defendants have created a policy and practice whereby Defendants significantly adjust downward and shave time from non-exempt, hourly-paid employees' time records and pays employees wages for less than their full time worked and full time reported on Defendants' own time clocks and computer programs.

17. Based upon its long-standing policy and practice of manipulating and downwardly adjusting time from its non-exempt, hourly-paid employee time records, Defendants have been systematically underpaying employees significant sums of wages and overtime compensation on a daily basis. The aggregate sum of unpaid wages for all of Defendants' Indiana employees based upon Defendants' non-neutral and self-serving rounding scheme is very substantial on a daily, weekly and annual basis.

18. Defendants' rounding can be determined from the face of Defendants' employees' time punch records and corresponding pay stubs. Defendants round all time punches and log in entries in its favor and to employees' detriment through a series of computer program commands

written in the time clock software along with a series of written rules distributed to employees governing discipline and time clock use. All rounding functions are programmed into Defendants' time clock and corresponding pay roll software and all rounding functions favor Defendants and harm employees.

19. Defendants' written employee handbook rules for the electronic time clock rules and Defendants' disciplinary rules distributed to Tuminella and her similarly situated coworkers include the following policies:

> "All employees (Exempt and Non-Exempt) are required to clock in and out on the Facility's designated electronic time clock."
>
> "All employees will receive a number for hand punching their time worked each day. The electronic hand punch must be done by the employee at:
>
> - The beginning of the day or work shift
> - At the beginning and end of lunch/dinner breaks and
> - The end of the day or work shift"
>
> "Employees are expected to clock in when they are ready to start their shift and not prior to placing coats and personal belongings in their secure designated area nor changing into work clothes nor drinking coffee etc. The same goes for clocking out. It is when you finish working the shift and not when you are ready to walk out the door. If someone is punching in too early or punching out too late, discipline may be imposed."
>
> "Employees working unauthorized overtime will be subject to disciplinary action, up to and including discharge."
>
> "Overtime pay is calculated by multiplying an employee's hourly rate by 1.5 (equal to "time and one-half") for time worked over 40 hours in the standard workweek."
>
> "**Clocking In & Out**
>
> - An employee's time must be recorded accurately to ensure proper payment of time worked. It is the employee's responsibility to clock in and clock out for each shift worked.
>
> - Employees who are habitually missing time clock punches, requiring time card adjustments, will be given 1 point. Habitually missing time clock

punches is defined as missing more than three (3) punches in a thirty (30) day period.

- Employees shall not punch in more than seven (7) minutes prior to their scheduled starting time unless authorized by management.
- Employees should punch out when they are leaving the floor. Gathering personal belongings should be done after punching out for the shift."

"**Tardiness**

- Tardiness is defined as clocking in eight (8) or more minutes past the employee's scheduled start time or returning eight (8) or more minutes past break periods or meal periods without prior approval."

and

"**Employee Breaks**

"Employees who work six (6) hours or more receive a thirty (30) - minute break to eat, which will be unpaid and scheduled by the Facility. Employees are required to clock out at the beginning of the lunch break and clock back in thirty (30) minutes later upon the conclusion of their break."

"If an employee fails to punch out and then back in upon finishing his/her lunch break, there will be an automatic deduction of the 30-minute lunch period."

20. Even if Defendants claim their time clock rounding commands appear to be neutral on their face (e.g., round time clock punches to the nearest 0.25 hour), Defendants corresponding disciplinary rules and clock use rules (e.g., "Employees shall not punch in more than seven (7) minutes prior to their scheduled starting time unless authorized by management") guarantee that the time clock rounding commands will favor Defendants virtually every time and harm employees. Indeed an employee risks discipline and violation of Defendants' rules if he/she does not use the time clock as Defendants instruct. With this 7 minute increment as the outlier, every time punch in will be rounded in Defendants' favor and the employees' detriment. Defendants' rounding practice is not neutral in its application.

21. Further, Defendants are rounding employee time punches and log in entries for Defendants' own financial benefit and for the sake of rounding alone. Defendants are not and have not made any determination or created any record for any shift for any employee that the employee was on the clock but not actively working. Moreover, Tuminella and each similarly situated coworker was working from each time clock punch in until each time clock punch out. Defendants have no records to show that its self-serving rounding occurred based upon any observation or determination by Defendants that an employee subjected to rounding was not working while on the clock during any shift. Defendants' records are the best and only records that show employees were working at all times punched in on Defendants' time clock. Employees were working when punched in on Defendants' time clock.

22. On a class-wide basis, Plaintiffs will need to obtain time clock data and pay roll records in discovery to provide specific dates and specific amounts of work time that Defendants rounded and did not pay, but Tuminella and every similarly situated class member was subjected to time clock rounding every work shift and every work week, resulting in unpaid wages and unpaid overtime every work week.

23. As stated above, Defendants' rounding can be determined from the face of its employees' time punch records and corresponding pay stubs. Defendants round all time punches in its favor and to employees' detriment in at least two (2) ways: First, Defendants automatically deduct 0.5 hours from the time clock punches measuring every shift worked by every hourly-paid employee, taking the cumulative amount of time from each employee's punch in at the first principal work activity of each shift through the employee's punch out at the last principal activity of the shift and then subtracting from that cumulative total a full 0.5 hour amount. This amount is deducted automatically from each employee's recorded work hours every shift

regardless of whether the employee is provided a bona fide meal period and regardless of the actual length of any meal period (e.g., was the meal period less than 30 minutes?, was the meal period less than 20 minutes?). Second, from each employee's time punches which have already been reduced by a full 0.5 hours, Defendant further reduces the net cumulative time downward in Defendant's favor by setting upon a scheme whereby Defendant rounds to the nearest quarter (O.25) of an hour, but sets up disciplinary rules that only permit rounding to benefit the Defendant - or cause discipline to the employee if rounding would theoretically benefit the employee.

24. Defendants further rig its rounding scheme in its own favor through a series of time clock use and disciplinary rules that further guarantee all rounding will occur in a way that favors Defendant and works to the detriment of employees. For example, employees are only permitted to clock in for a shift at a moment that is seven (7) or fewer minutes before the start of a shift. However, if an employee clocks in late, the employee is subject to be disciplined with a tardiness point or half-point. These same disciplinary rules apply to any meal period. If an employee misses altogether or has a meal period that lasts less than 30 minutes, Defendant rounds up in its favor and automatically deducts from the employee's recorded work hours a full 0.5 hours from the employee's cumulative work hours recorded on the time clock. However, if an employee takes a meal period and is late returning from a meal period (e.g., eight or more minutes), the employee is assessed discipline under the disciplinary point system (e.g., a half point or a point for tardiness).

25. Tuminella specifically alleges and asserts that she and her similarly situated hourly-paid coworkers routinely missed meal breaks altogether and also had meal periods during work shifts for Defendant that lasted significantly less than 30 minutes. Regardless of length of

meal period or whether a meal period occurred, Defendants rounded the meal break up to 0.5 hours and automatically deducted 0.5 hours from every shift Tuminella worked and every shift other hourly-paid employees worked.

26. As a specific representative example, Tuminella asserts that she followed Defendant's written employment policy and did, in fact, punch out and punch back in whenever she took an actual meal break. However, Tuminella was afforded a bona fide meal break on very, very few occasions and had reason to clock out for a meal break on very, very few occasions. Defendants had a policy and practice of requiring nurses to remain on their floor when they were the only nurse on duty. Tuminella was the only registered nurse working on her assigned floor on almost every shift she worked for Defendants. Tuminella was not given a bona fide meal break on many dozens of shifts during her employment and Defendants were aware, as Tuminella did not clock out for the meal break. However, Defendants automatically deducted a 30 minute presumed meal break from Tuminella's time clock punches recorded and did not pay Tuminella for 30 minutes she actually worked on almost every single shift. Tuminella is owed many dozens of hours of wages and/or overtime compensation for the many dozens of 30 minute auto deductions which were taken from her pay by Defendants even though Tuminella worked those 30 minute increments and Defendants had records and a system that created Defendants' knowledge that Tuminella should be paid an no auto deduction should have been taken.

27. Defendants' computer-programmed time rounding scheme, coupled with its disciplinary rules, harmed Tuminell and her similarly situated coworkers in the same way on a company-wide basis every work week. This rounding scheme has been harming Defendants' employees for many years. Based upon information and belief, this time rounding scheme has

been harming employees for three (3) or more years prior to the date the original complaint was filed. Tuminella's unpaid wages for regular and overtime hours and their damages under the FLSA and IWPS are representative of those owed to all of Defendants' Indiana-based workers subjected to the same time clock and pay roll software and same time punch rounding scheme.

28. Pursuant to its systematic, class-wide practices, Defendants are not compensating hourly-paid employees for all time worked and recorded on a continuous work day basis.

29. All of Defendants' time rounding practices were intentionally computer programmed and performed to Defendants' advantage and the detriment and harm of Tuminella and all hourly-paid and non-exempt employees. Defendants' time punch rounding practices are not neutral, as required by the FLSA and corresponding Indiana law.

30. Defendants intentionally and knowingly violated employees' rights to earned wages and earned overtime compensation through Defendants' unlawful and non-neutral time rounding schemes and Defendants' conscious decision to shave recorded work time and pay employees less in wages and overtime than the employees earned while performing work for the Defendants.

31. Defendants intentionally, knowingly and/or with reckless disregard violated Tuminella's right to her earned wages and overtime compensation. In the same way, Defendants intentionally, knowingly and/or with reckless disregard violated all its non-exempt, hourly paid workers rights to their earned wages and overtime compensation. All said wage practices created violations of the FLSA and/or IWPS.

32. By way of this Complaint, Tuminella is seeking for herself and all similarly situated coworkers all available relief, including, but not limited to, injunctive relief, payment of

their overtime wages at the correct rate, liquidated damages, and payment of her reasonable attorney's fees, costs and expenses.

### *III. JURISDICTION AND VENUE*

33. This Court has jurisdiction over the subject matter of this Complaint, which is based upon a federal question of law, under 28 USC § 1331, 28 USC § 1343, 29 USC § 201 et seq. This Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because those state law wage claims are so related to the FLSA claims to form part of the same case or controversy.

34. This Court is the appropriate venue for this cause of action as Defendants employed Tuminella and many of the potential opt in plaintiffs in Putnam County, Indiana. Much of the illegal activity took place in the Southern District of Indiana.

### *IV. COLLECTIVE ACTION ALLEGATIONS*

35. Tuminella incorporates herein by reference paragraphs 1 - 34 above.

36. Tuminella brings this action individually and as a collective action on behalf of other current and former non-exempt, hourly paid employees of Defendants who were similarly denied payment of overtime compensation at full one and one-half times their regular rate of pay.

37. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b) on behalf of Tuminella and on behalf of all of Defendants' current and former non-exempt, hourly paid employees employees who were damaged by Defendants' wage practices made illegal by the FLSA. By virtue of the "collective action," Tuminella represents the identical and/or similar interests of former and current

coworkers denied overtime compensation under the same or similar circumstance. Tuminella anticipates that other of Defendants' employees and former employees will opt in to the action.

38. The number of Defendants' current and former employees who will be members of this collective action are so numerous that joinder of all members is impracticable. Instead, Tuminella will pursue discovery to obtain the names of Defendants' other current and former Prime Care employees, to provide notice of the collective action, and to offer the opt in opportunity.

39. Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

40. The claims of Tuminella, the representative party, are typical of the claims of the whole collective group of Defendants' current and former employees harmed by Defendants' illegal wage practices.

41. Tuminella will act to fairly and adequately protect the interests of the entire collective group of Defendants' current and former non-exempt, hourly paid employees.

42. A collective action is superior to other available means for the fair and efficient prosecution of these wage claims against Defendants. For example, to prove Defendants' illegal wage practices, Tuminella and other members of this collective group would seek in discovery records about all similarly situated current and former employees of Defendants who were denied overtime compensation and were were not paid overtime for training hours, missed or interrupted meal breaks, and were not paid at the full regular rate when working and earning overtime compensation. Individual lawsuits by the members of the collective group could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for

limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

43. A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of individual group member overtime wages not paid by Defendants. Some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

44. A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

## *V. CLASS ACTION ALLEGATIONS BROUGHT UNDER THE INDIANA WAGE PAYMENT STATUTE*

45. Tuminella incorporates herein by reference paragraphs 1 - 44 above.

46. Tuminella brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all a class of persons employed by Defendants in Indiana within the last two years prior to the date the original complaint was filed ("IWPS Class") defined as:

> **All current and former employees of Defendants employed at one or more of Defendants' locations in the State of Indiana who were paid on an hourly basis and used time clocks provided by Defendants at any time during the two (2) years preceding the date of the filing of this Action to the present.**

47. The class is so numerous that joinder of all class members is impracticable. Tuminella is unable to state the exact size of the potential IWPS Class but, upon information and belief, avers that it consists of well over one hundred (100) people.

48. There are questions of law or fact common to the IWPS Class including: whether Defendants failed to pay its employees for all work time recorded on Defendants' own time clock (which Defendants unlawfully and non-neutrally rounded down in its own favor and did not fully pay), and whether that resulted in the underpayment of wages.

49. Tuminella will adequately protect the interests of the IWPS Class. Her interests are not antagonistic to but, rather, are in unison with, the interests of the IWPS Class members. Tuminella's attorneys have broad experience in handling class action wage-and-hour litigation and both are fully qualified to prosecute the claims of the IWPS Class in this case.

50. The questions of law or fact that are common to the IWPS Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the IWPS Class, listed above, are common to the class, and predominate over any questions affecting only individual class members.

51. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring IWPS Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many IWPS Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## *VI. STATEMENT OF LEGAL CLAIMS*

### *A. FAIR LABOR STANDARDS ACT CLAIM*

52. Tuminella incorporates herein by reference paragraphs 1 through 51 above.

53. Sterling Healthcare Management, LLC is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA. Sterling Healthcare Management, LLC has greater than $500,000.00 per year in gross volume of sales or income, qualifying it as an "enterprise." Sterling Healthcare Management, LLC is an "employer," as that term is defined by the FLSA. Finally, Sterling Healthcare Management, LLC is a "person" as that term is defined by the FLSA.

54. Asbury Towers Retirement Community Inc. is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA. Asbury Towers Retirement Community Inc. has greater than $500,000.00 per year in gross volume of sales or income, qualifying it as an "enterprise." Asbury Towers Retirement Community Inc. is an "employer," as that term is defined by the FLSA. Finally, Asbury Towers Retirement Community Inc. is a "person" as that term is defined by the FLSA.

55. Defendants failed and refused to pay Tuminella and all her similarly situated non-exempt, hourly paid coworkers at a full overtime compensation rate based upon an amount that was one and one-half times each employee's full regular rate. This occurred in multiple ways, as Defendants failed to include training time as hours worked in the overtime calculation, failed to pay for missed or interrupted meal breaks that were not bona fide meal periods, and failed to include all pay (e.g., bonus, shift differential, weekend pay, retro pay) in the employees' regular rates of pay when calculating overtime rates of pay. Defendants violated Tuminella and all similarly situated coworkers' FLSA rights by failing and refusing to pay them overtime compensation at the fully required rates for hours worked over forty in a week.

56. Defendants' failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Defendants to a three year statute of limitations.

57. Tuminella, individually and on behalf of all similarly situated current and former non-exempt, hourly paid employees of Defendants, seeks all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Defendants' violations of the Fair Labor Standards Act.

### *B. INDIANA WAGE PAYMENT STATUTE CLAIMS*

58. Tuminella incorporates by reference the foregoing allegations as if fully rewritten herein.

59. Tuminella and other similarly situated employees were not paid for work time recorded on Defendants' time clocks, including time recorded at the beginning of a work shift, time recorded at the end of a work shift, and time working through any supposed meal break. Tuminella and her fellow Plaintiffs were not paid for this recorded work time as a result of Defendants' computer programmed and non-neutral Kronos time clock rounding schemes.

60. Tuminella has a statutory wage claim arising under the Indiana Wage Payment Statute, I.C. 22-2-5 and she is the Plaintiff who represents the same or similar interests of all current employees of Defendants and all of Defendants' former hourly-paid employees who voluntarily resigned from employment.

61. By way of this Claim, Tuminella is seeking, individually and on behalf of members of the Plaintiff Class of current and former employees of Defendants, all available

damages, including all unpaid wages, all underpaid wages, all available liquidated (treble damages), all attorney's fees, costs and expenses, plus any other damage to which Tuminella and her fellow Plaintiff Class members may be entitled pursuant to law. Pursuant to I.C. 22-2-5-2, Tuminella is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages, underpaid wages, plus all available damages, including, but not limited to, double the amount of wages due as additional monetary damage, plus all attorney's fees, costs and expenses.

62. Tuminella is expressly alleging that Defendants did not act in good faith when Defendants failed to pay wages to Tuminella and the Plaintiff Class. Tuminella is expressly alleging that Defendants acted in bad faith when Defendants failed to pay all recorded and earned wages to Tuminella and the Plaintiff Class.

## *VII. PRAYER FOR RELIEF*

WHEREFORE, Plaintiff Kaitlin A. Tuminella, individually and on behalf of all other similarly situated current and former employees of Defendants, respectfully requests that the Court enter judgment against Defendants, jointly and severally, and issue all available relief to Plaintiffs including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid minimum wages, all unpaid overtime wages, all liquidated damages, injunctive relief, and payment of all reasonable attorney's fees, costs and expenses;
2. All damages available under the IWPS, including all unpaid wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;
3. All unpaid wages;

4. All reasonable attorney's fees and expenses;

5. Costs;

6. A permanent injunction barring Defendants from future violations of the FLSA overtime provisions and minimum wage provisions;

7. Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS LLP

By/s/*Robert P. Kondras, Jr.*
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
P.O. Box 1527
Terre Haute, IN 47808
(812) 232-9691
Facsimile: (812) 234-2881
kondras@hklawfirmllp.com

/s/*Robert J. Hunt*
Robert J. Hunt (#30686-49)
The Law Office of Robert J. Hunt, LLC
1905 South New Market Street, Ste 168
Carmel, Indiana 46032
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
E-mail: rob@indianawagelaw.com

Attorneys for Plaintiffs